FILED
IN CLERKS OFFICE

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

2005 SEP 30  A 11: 40

U.S. DISTRICT COURT
DISTRICT OF MASS.

DAVID S. BOLIVER,                )

    Plaintiff

                              ) **Civil Action No. 05-11346-MEL**

MBNA AMERICA BANK, N.A.,

                              )

    Defendant

                              )

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO STAY COURT PROCEEDINGS PENDING COMPLETION OF ARBITRATION**

                                              **DAVID S. BOLIVER,**

                                              Njoroge Kamau
                                              46 Milton Street
                                              Worcester, MA 01605
                                              (508) 767-3900

1

## TABLE OF CONTENTS

I.   UNDER THE FDCPA, WHICH PROHIBITS COLLECTORS FROM CROSSING THE LEAST SOPHISTICATED CONSUMER STANDARD, DAVID BOLIVER SHOULD NOT BE COMPELLED INTO ARBITRATION.

II.  BOLIVER SHOULD NOT BE COMPELLED TO ARBITRATION AS THE ARBITRATION CLAUSE IN THE CONTRACT IS AGAINST PUBLIC POLICY AND ENFORCING IT WOULD IN EFFECT BE DENYING BOLIVER THE OPPORTUNITY TO PROCEED WITH TRIAL.

III. IN THE ALTERNATIVE, THE PROCEEDING SHOULD NOT BE STAYED PENDING COMPLETION OF ARBITRATION BECAUSE NATIONAL ARBITRATION FORUM (NAF) IS NOT A NUETRAL ARBITER AND BOLIVER SHOULD NOT BE FORCED TO SUBMIT TO PROCEEDINGS CONDUCTED BY NAF BECAUSE HE WILL NOT BE ASSURRED AN IMPARTIAL HEARING .

## TABLE OF AUTHORITIES

1. *Rosa v. Gaynor* 784, f.Supp.1 D. Conn., 1989

2. *Bradford v. Rockwell Systems, Inc.*, 238 F. 3d. 549, 553(4th Cir. 2001).

3. *Blakemore v. Pekay*, 895 F. Supp. 972, 983-984 (N.D. Ill. 1995)

4. *Vaughn v. CSC Credit Services, Inc.*, WL 51402 N.D. Ill (1995).

5. *Montrosse v. Conseco Finance Serving Corp,* F. Supp. 2D 2000.

6. In *Brown v. Vance,* 637 F.2d 272 (5th Cir. 1981).

7. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth,* 473 US 614 (1985).


## STATUTES

1. <u>9 U.S.C. § 2</u>

2. <u>15 U.S.C.A. § 1692g.</u>

3. <u>12 C.F.R. § 226.13 and 15 U.S.C. § 1666.</u>

## **BACKGROUND**

On or about March 2003, the plaintiff entered into an open-ended credit transaction, namely the opening of a MBNA open-ended credit card account, number 4313035434945051, with Defendant. The above-referenced account was used primarily or exclusively for personal, family and/or household purposes.

The Defendant submitted periodic statements reflecting extension of credit, and costs and fees. On or about January 20, 2005 the Plaintiff submitted to the Defendant a notice of billing error, pursuant to and in compliance with 12 C.F.R. § 226.13 and 15 U.S.C. § 1666.

The Plaintiff sent the Defendant additional billing notices. However, each time the Defendant sent a statement with errors. This has typically occurred every month ever since. On or about February 24, 2005, and numerous times thereafter, upon receiving inadequate response from the Defendant, the Plaintiff notified the Defendant the billing error(s) specified in the initial billing error notice were still in dispute.

**ARGUMENT**

I.     UNDER THE FDCPA, WHICH PROHIBITS COLLECTORS FROM CROSSING THE LEAST SOPHISTICATED CONSUMER STANDARD, DAVID BOLIVER SHOULD NOT BE COMPELLED INTO ARBITRATION.

    The Federal Arbitration Act (FAA) provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable" 9 U.S.C. §2, however, the written agreement must not violate the standard set by the Fair Debt Collection Practice Act (FDCPA). In combating the abusive practices of debt collectors, the Fair Debt Collection Practice Act (FDCPA) sets a standard that prohibits debt collectors from interfering with the rights of consumers that it considers unsophisticated. The main purpose is to protect the public of which the vast majority is ignorant, unthinking, and credulous. *Rosa v. Gaynor* 784,f.Supp.1 D. Conn., 1989. Debt collectors may not defeat the purpose of the FDCPA by making required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of statute's solitude. 15 U.S.C.A. § 1692g.

    The Federal Arbitration Act (FAA) provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable" 9 U.S.C. §2, however, the written agreement must not violate the unsophisticated consumer standard and

where the consumer knows absolutely nothing about arbitration or learns about the court system from watching television .Most shows on television depicting court sessions, rarely show or explain how arbitration works and or its benefits. Thus, it is unfair to the average consumer, like Boliver, without knowledge pertaining to arbitration and how it works, to be forced to go into it.

Boliver falls within the category of an unsophisticated consumer. He knows only what is told and what he watches on television about arbitration. The concept is new to him and one that he cannot easily fathom. Historically, arbitration was limited to only merchants in commerce. The above has been the norm until very recently and it is no surprise that a vast majority of consumers in America today are still overwhelmed by the process.

When an arbitration clause has provisions that defeat the remedial purpose, the arbitration clause becomes unenforceable. *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F. 3d. 549, 553 (4th Cir. 2001). "to require the least sophisticated consumer to exercise his rights immediately under FDCPA or lose them contrary to the basic premise of the Act, which is to protect unsophisticated debtors from debt collectors who may use the legal system, about which the consumer has little knowledge, to bludgeon them into submission". *Blakemore v. Pekay*, 895 F. Supp. 972, 983-984 (N.D. Ill. 1995). In the case the court ruled that this Defendant did not waive his rights under FDCPA by any consent to arbitration by signing the contract that required arbitration.

The propensity of an unsophisticated consumer to be misled or confused becomes even more pronounced when their financial well being is *involved Vaughn v. CSC Credit Services, Inc., WL 51402 N.D. Ill (1995)*. Boliver works as a sales operations

7

exexutive. His job does not provide an opportunity for Mr. Boliver to learn enough to know his legal rights and protections as a consumer. At the time he signed the open-ended credit card agreement, Boliver knew very little about the legal system and or his rights under consumer protection laws. Thus, subjecting him to arbitration because he signed an agreement containing a clause that supposedly made provisions for arbitration, under the above circumstances, violates the Unsophisticated Consumer Standard as it places a burden on a consumer who knows little about the legal system and his rights.

II.  BOLIVER SHOULD NOT BE COMPELLED TO ARBITRATION AS THE ARBITRATION CLAUSE IN THE CONTRACT IS AGAINST PUBLIC POLICY AND ENFORCING IT WOULD IN EFFECT BE DENYING BOLIVER THE OPPORTUNITY TO PROCEED WITH TRIAL.

The Court realizes that the one policy goal behind the Federal Arbitration Act was to allow the quick and cheap resolution of disputes. *Montrosse v. Conseco Finance Serving Corp, F. Supp. 2D 2000*. However is equally aware that the framework imposed by the FAA is disadvantageous the unsophisticated consumer. *Id.* The Court in Montrosse struggled with the issues of public policy goal behind FDCPA and finally concluded that it is a factual rather than an issue of law. In that case, the Plaintiff argued that compelling him to submit to arbitration violated

public policy because the contract was forced upon him, an unknowing consumer to arbitrate matters arising out of the contract. However, there the Court ruled against the consumer because it believed that the consumer's argument posed a factual issue that could not be resolved by the Court. But, it agreed in it's analysis that it is unfair and against public policy for the bigger Corporations to impose upon an unsophisticated consumer the burden of submitting to arbitration and lose their rights to litigate.

Here, like in the above case, because Boliver had limited knowledge about credit extension and not educated about the procedures of arbitration, he should not be compelled to arbitration because it is unfair and to do so violates public policy.

III.   IN THE ALTERNATIVE, THE PROCEEDING SHOULD NOT BE STAYED PENDING COMPLETION OF ARBITRATION BECAUSE NATIONAL ARBITRATION FORUM (NAF) IS NOT A NUETRAL ARBITER AND BOLIVER SHOULD NOT BE FORCED TO SUBMIT TO PROCEEDINGS CONDUCTED BY NAF BECAUSE HE WILL NOT BE ASSURRED AN IMPARTIAL HEARING .

In *Brown v. Vance,* 637 F.2d 272 (5th Cir. 1981), the court found that a fee system in which decision makers were paid on a per case basis violated due process. Not only is a biased decision maker constitutionally unacceptable but our

system of law has always endeavored to prevent even the possibility of unfairness. *Id.* by allowing the proceeding in the alternative to be stayed pending completion of arbitration will create the very unfairness that the judicial system is trying to prevent.

The arbitrators, under NAF, receive payment for their services based solely on the number of cases they handle. This system encourages arbitrators to rule in favor of the creditors in an attempt to garner future appointments creditors, and in turn permits creditors to exercise significant influence over the arbitrators. The plaintiff further assert the chosen arbitral organization, the National Arbitration Forum (NAF), lacks "the fundamental component of arbitration: that the arbitration be conducted by a neutral decision maker."

Additionally, the NAF is a creditor-friendly arbitration organization. Directors for the organization are former employees of lending institutions and members of the defense bar that have specialized in representing lenders in litigation against consumers. These directors exercise significant control and authority over the arbitration process at NAF. The list of arbitrators for NAF are typically secret, and only individuals designated by the creditor become arbitrators.

The NAF routinely solicits its business from the financial services industry and engages in inappropriate contacts with financial institutions.

The solicitations do not hold NAF out as a neutral decision maker, but rather present arbitration with NAF as an opportunity for financial service institutions to limit the awards for consumers on valid claims brought against members of the financial service industry. NAF has indicated its rules provide preferential treatment for creditors by reducing "collection costs" and has touted "every award is limited to the amount claimed," thereby eliminating the possibility for punitive damages, even in circumstances where the financial institution is guilty of outrageous conduct against consumers.

The Plaintiff seeks a declaration from the Court voiding the Agreement. The plaintiff alternatively seek discovery to provide an appropriate factual record to resolve whether the parties entered a valid agreement to arbitrate.

It is well-established that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 940 (4th Cir. 1999)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); Drews Distrib., Inc. v.Silicon Gaming, Inc., No. 00-1643, 2001 WL 305659, at *2 (4th Cir.Mar. 29, 2001). As the Supreme Court has stated, "We are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means

of dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth 473 US 614 (1985).

However recent development in the case law show that merely filing a motion to compel arbitration, , does not result in automatic referral. Rather, "It is for the court, not the arbitrator, to decide in the first instance whether a dispute is to be resolved through arbitration." AT & T Techs.,Inc. v. Communications Workers of Am., 475 U.S. 643, 651 (1986);see also A.T. Massey Coal Co. v. Int'l Union, 799 F.2d 142, 146(4th Cir. 1986) ("whether there is a contract to arbitrate 'is undeniably an issue for judicial determination.'")(quoting AT & T Techs., 475 U.S. at 649). To discharge this duty, district courts are directed to conduct "'a limited review to ensure : [1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement.'" Hooters, 173 F.3d at 938 (quoting Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997)

One component of this "limited review" involves a determination of whether the contract is invalid or unenforceable on such "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. For example, the Supreme Court has held "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs.,Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Saturn Distrib. Corp. v. Williams, 905 F.2d 719, 727 (4th Cir. 1990). The plaintiff also believes that existing Massachusetts state law can and should be

applied to revoke any contract which results from fraud or the sort of overwhelming economic power which can render an agreement unconscionable.

## CONCLUSION

The question properly before this court is whether an unsophisticated consumer should be compelled into arbitration where that would mean that the consumer forfeits his legal rights to litigate his case in court of competent jurisdiction. Boliver respectfully requests this court to deny the Defendant's motion(s) to compel him into arbitration and the alternative motion to stay the proceedings pending completion of arbitration.

DAVID S. BOLIVER

By his attorney,

_____

Njoroge Kamau
46 Milton Street
Worcester, Massachusetts
Tel. (508) 767-3900
Fax. (508) 767-3990
BBO#659849